IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FREDERICK O. SILVER,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL CREDIT SYSTEMS, INC.,<br><br>Defendant. | Case No.: 1:24-CV-03238-SCJ-JCF |

**DEFENDANT NATIONAL CREDIT SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S "MOTION TO COMPEL" AT ECF 62**

Defendant National Credit Systems, Inc. ("NCS") submits this opposition to Plaintiff Frederick Silver's filing styled as a "Motion to Compel Defendant to Cease Credit Reporting Pending Litigation". ECF 62. Although labeled as a "motion to compel," Plaintiff identifies no interrogatory, request for production, request for admission, deposition issue, or discovery deficiency. He identifies no meet-and-confer effort. He cites no part of Rule 37. Instead, Mr. Silver again seeks the same injunctive relief this Court twice denied, and which is now before the Eleventh Circuit - an order halting NCS's credit reporting of a debt that was adjudicated and

reduced to judgment in state court well over a year before this litigation commenced.[1]

This filing reflects Plaintiff's ongoing pattern of frivolous submissions in this Court and elsewhere makes his refusal to engage in discovery all the more egregious (he has said he will not respond until he "gets what he wants," though he is now ordered to respond by December 4, 2025). He continues to disregard clear procedural rules, misuse captions to avoid prior denials, and repackage the same injunctive requests under new labels. Unless the Court intervenes decisively, this conduct - regarding the injunction and all other aspects of this case - will continue.

I.     **Summary of Factual and Procedural History:**

This federal action is, at its core, Mr. Silver's attempt to overturn a final state-court judgment that was entered against him more than a year before he filed this lawsuit. ECF 61-1, pgs. 34, 40-42. Specifically, on April 17, 2024, the Chatham County Superior Court entered a $24,710.97 judgment against Plaintiff arising out of his tenancy at MAA Benton Apartments. *Id.* at 40-42. The state court record filed

---

[1] Mr. Silver misstates or misunderstands § 1692g(b), claiming NCS was required to "cease all collection activity" pending validation, even though that subsection applies only when a written dispute is submitted within 30 days of the initial communication. He identifies no such timely dispute, and NCS has nonetheless validated his account several times. His filings contain no specific factual dispute or alleged inaccuracy; they simply assert he "does not owe" the debt while omitting that a state-court judgment was entered against him for roughly $25,000. His disagreement with that judgment does not involve any wrongful conduct by NCS and does not confer jurisdiction on this Court.

at ECF 61-1 establishes that Plaintiff was personally served with the landlord-tenant complaint on July 17, 2023; that he filed an Answer and Counterclaim, multiple motions, and two emergency requests to stay the writ of possession; and that he submitted a pauper's affidavit using the same email address (ECF 61-1, pg. 36), he uses in this case. After full litigation, the state court entered judgment against him - on the merits.

Plaintiff disclosed none of this in his federal Complaint. Instead, he affirmatively represented that he was "unaware" of the debt. ECF 7, para. 22. Those statements were very clearly false. His federal claims depend entirely on treating this judgment debt as invalid and compelling NCS to stop reporting it. That is precisely the type of collateral attack on a state-court judgment that federal courts lack jurisdiction to entertain under Rooker–Feldman (which NCS will brief in seeking dismissal if necessary)**.** Plaintiff surely cannot meet his burden to show a likelihood of success on the merits for these reasons, as well.

Rather than litigate within the ordinary federal rules, Plaintiff filed this case and immediately launched an aggressive campaign for injunctive relief (among other such baseless motions). He filed an "Emergency Motion for Preliminary Injunction" seeking deletion of the tradeline and a declaration that the debt was invalid. ECF 25. The Court denied that request on June 13, 2025 at ECF 26. Within weeks, Plaintiff filed a renewed injunction motion (ECF 36), a motion to expedite (ECF 37)**,** and a

motion to compel (ECF 52) all seeking the same injunction. On September 18, 2025, the Court again denied the requested relief and expressly held that Plaintiff's earlier "motion to compel" was the same injunctive relief previously denied. ECF 54.

Plaintiff's current filing repeats the exact same arguments, now recast for a fifth time (sixth if you count his appeal to the Eleventh Circuit) as a "motion to compel." This request, like the others, should be summarily denied. Moreover, this repeated effort to improperly relitigate the same exact motion multiple times over suggests that this behavior will not cease absent judicial intervention. This is also the same conclusion reached by multiple other jurisdictions (as previously identified in NCS's filing at ECF 44).

II.     **Plaintiff has improperly filed his "motion to compel".**

Plaintiff's filing at ECF 62 is not a motion to compel, nor has Plaintiff followed the process detailed in the Discovery Guidelines at ECF 42. It identifies no discovery request, quotes no interrogatory or RFP, alleges no deficient response from NCS, and contains no Rule 37 certification. Instead, it argues the merits of his FDCPA and FCRA theories and again seeks an order requiring NCS to halt credit reporting - confirming that the filing is simply another attempt to obtain the same injunction this Court has already denied.

ECF 62 also violates every requirement of ECF 42: Plaintiff conducted no meet-and-confer, made no attempt to communicate any discovery issue to counsel,

and did not request a discovery conference. This approach mirrors the tactic the Court identified in its September 18, 2025 Order (ECF 54), where it held that Plaintiff's prior "motion to compel" was, in truth, a renewed request for injunctive relief that had already been rejected. Plaintiff's decision to file the same request again under the same caption shows deliberate disregard of that instruction.

It also must be stated that Plaintiff has spent months flooding the docket with frivolous and duplicative requests while flatly refusing to participate in discovery. He served no interrogatory answers, no RFP responses, allowed all RTAs to be deemed admitted, and has not produced not a single document (and actively concealed the state court action) - yet continues to accuse NCS of misconduct. When NCS raised these failures with the Court, Plaintiff admitted at the November 20, 2025 discovery conference that he had produced absolutely nothing. The Court then ordered full responses by December 4 and reminded him that no motion to compel may be filed without a good-faith meet-and-confer and a request for a discovery conference. See ECF 65; Discovery Guidelines, ECF 42. The Court also expressly warned him that monetary sanctions are available to NCS should he decline to comply with the December 4, 2025 deadline.

Plaintiff continues to withhold even the most basic discovery; he has produced nothing. His only "disclosures" – which contain the only details pertaining to his claims - contain virtually no usable information. Yet he keeps filing repetitive

injunction motions and appeals while believing he need not participate in discovery until he gets the relief he wants - an indefensible stance given that the account was already reduced to judgment and his pleadings contain no coherent factual allegations. NCS is left guessing at claims that its own records do not support any of Plaintiff's assertions. Particularly telling is that, through the date this case was filed, Plaintiff refused to say whether he disputed the debt at all, had lodged no disputes with any consumer reporting agency, submitted no written disputes to NCS, and was certainly not receiving "voluminous" calls.

Even if ECF 62 were a legitimate motion to compel - which it is not - Rule 37(a)(5) would require fee-shifting because it was filed without any conferral and does not even concern a discovery matter. And if Plaintiff ultimately disobeys a discovery order, Rule 37(b) would permit sanctions up to dismissal. While NCS does not contend Rule 37 is formally triggered here, the contrast underscores how far Plaintiff's conduct deviates from the Rules and from Magistrate Judge Howard's explicit discovery guideline requirements.

### III. The injunction Plaintiff seeks is foreclosed by the undisputed record and binding FCRA and FDCPA authority.

Even if ECF 62 were procedurally proper - which it is not - it fails on the merits. In his prior motion to amend, Plaintiff attached an Experian tradeline showing the notation: "Account information disputed by consumer (Meets

requirement of the Fair Credit Reporting Act)." ECF 60-2. This notation satisfies both § 1692e(8) and § 1681s-2(b). Courts have repeatedly held that a furnisher's duties under § 1681s-2(b) arise only when the information furnished is objectively inaccurate. See Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1312–13 (11th Cir. 2018). A consumer's disagreement with a debt does not create an inaccuracy. The Eleventh Circuit reaffirmed this in *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359 (11th Cir. 2024), holding that furnishers are not tribunals and do not adjudicate underlying contractual disputes.

Moreover, private injunctive relief is unavailable under the *Sibley v. Fulton Dekalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982). Further, courts within this Circuit have rejected the argument that credit reporting, standing alone, is unlawful "collection activity." See Farmer v. Phillips Agency, Inc., 285 F.R.D. 688, 698 (N.D. Ga. 2012). Plaintiff cites no authority requiring a furnisher to cease reporting during litigation.

Rather, Plaintiff relies on *Edeh v. Midland Credit Mgmt., Inc.*, but Edeh did not hold that reporting must cease pending litigation or validation. It merely held that in a damages action, reporting may be considered one act in the overall collection process. Nothing in *Edeh* supports Plaintiff's injunction request.

Plaintiff's allegations suffer from a fundamental jurisdictional defect. The state-court record filed at ECF 61-1 shows that he was personally served at his

apartment on July 17, 2023; that he filed an Answer and Counterclaim in the landlord-tenant action; that he filed multiple motions, including a pauper's affidavit using the same email address he uses here; and that the state court entered a final judgment against him on April 17, 2024 for $24,710.97. None of these documents were attached to his federal complaint. Instead, Plaintiff affirmatively asserted that he did not recognize the debt – which is patently and plainly false, asserted with the clear intent to deceive.

As is pertinent here, and because Plaintiff now seeks an injunction requiring NCS to treat that judgment debt as if it does not exist, his claims fall squarely within the Rooker–Feldman doctrine. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), federal district courts lack jurisdiction to review or modify state-court judgments. In *Green v. Jefferson Cnty. Comm'n*, 563 F.3d 1243 (11th Cir. 2009), the Eleventh Circuit held that claims are barred where granting federal relief would essentially void a state-court judgment. That is exactly the relief Plaintiff seeks: he wants this Court to declare that a judgment debt is invalid and to stop NCS from reporting it. This Court has no jurisdiction to grant that relief.

IV. **Plaintiff's conduct mirrors the abusive litigation patterns identified by multiple courts and will not stop without judicial intervention.**

As previously detailed at ECF 44, Plaintiff's conduct in this case mirrors the litigation pattern documented in multiple courts across the country, including Texas,

the Fifth Circuit, Nevada, and Washington, where his actions were dismissed or sanctioned for frivolous and abusive filings. The same features are present here: concealing a state-court judgment, repeatedly refiling denied injunctive requests under new labels, refusing to participate in discovery, disregarding meet-and-confer requirements, ignoring established precedent and procedures, and multiplying the burden on both the Court and NCS with each new filing.

Plaintiff's conduct is not merely inefficient; it is sanctionable. And, as this Court can likely appreciate – it is expensive. The Court has inherent authority to address abusive litigation tactics and fraud on the court, as recognized in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Rule 11(c)(3) also authorizes the Court to issue an order to show cause on its own initiative where a party's filings contain false or improper representations. And under 28 U.S.C. § 1927, fees may be imposed where a party unreasonably and vexatiously multiplies proceedings.

While NCS is not seeking Rule 37 sanctions on this particular filing - because the motion at issue is not a true discovery motion and no discovery order has yet been violated - the record now makes clear that Plaintiff's continued refusal to follow procedural rules, combined with his serial, meritless injunction filings, cannot continue unchecked. NCS asserts sanctions are warranted, or alternatively, an order to show cause so that Plaintiff is required to explain why sanctions – including

monetary sanctions up through dismissal - should not issue under Rule 11(c), 28 U.S.C. § 1927, and the Court's inherent authority.

V.     **Requested relief.**

For these reasons, NCS respectfully asks the Court to deny Plaintiff's motion, confirm that it is not a proper Rule 37 filing and that Plaintiff must comply with ECF 42 and the November 20 Order before raising any discovery issues, caution him that continued misuse of injunction filings or refusal to participate in discovery may result in sanctions under the Court's inherent authority or 28 U.S.C. § 1927 (including dismissal), and grant any further relief necessary to halt Plaintiff's abusive motion practice.

                                                                 Respectfully submitted,

                                                                 */s/Katrina M. DeMarte*
                                                                 KATRINA M. DEMARTE
                                                                 DEMARTE LAW, PLLC
                                                                 39555 Orchard Hill Place Suite 600
                                                                Novi, MI 48375
                                                                313-509-7047
                                                                Katrina@demartelaw.com
                                                                *Attorney for Defendant*

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1

Undersigned counsel hereby certifies that this document has been prepared with Times New Roman 14-point font as approved by LR 5.1(B).

By: */s/ Katrina M. DeMarte*
Katrina M. DeMarte

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all persons requesting notice. A copy of this document will be mailed to the Plaintiff and provided via electronic mail.

*/s/ Katrina M. DeMarte*
Katrina M. DeMarte