<mark>EXHIBIT 1</mark>

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

---

FREDERICK O. SILVER,                     Case No. 1:24-cv-03238-SCJ-AWH

    Plaintiff,

     v.

NATIONAL CREDIT SYSTEMS, INC.

    Defendant.

---

### DEFENDANT NATIONAL CREDIT SYSTEMS, INC.'S FIRST SET OF DISCOVERY TO PLAINTIFF

---

To:    Plaintiff, Frederick O. Silver
      *Pro Se Plaintiff*
      21905 Mountain Hwy E
      Unit 4143
      Spanaway, WA 98387-7583
      ASCLV1@gmail.com
      Ph: (702) 473-0365

      Defendant National Credit Systems, Inc. ("Defendant" or "NCS") serves its First Set of Discovery to Plaintiff Frederick Silver ("Plaintiff" or "Silver") pursuant to the Federal Rules of Civil Procedure, specifically including Rules 26, 33, 34 and 36, to be answered in the time and manner set forth therein.

Silver v. NCS (Case No. 1:24-cv-03238-SCJ-JCF) Discovery from National Credit Systems, Inc.

Page 1

## DEFINITIONS AND INSTRUCTIONS FOR USE IN DISCOVERY

As directed by Rule 33 of the Federal Rules of Civil Procedure, Plaintiff shall serve a written response to these interrogatories under oath to the offices of the undersigned counsel within thirty (30) days after service of the interrogatories.

As directed by Rule 34 of the Federal Rules of Civil Procedure, Plaintiff shall serve a written response to the document requests and shall produce the requested documents in electronic format to katrina@demartelaw.com and/or for inspection and copying at 39555 Orchard Hill Pl. Ste. 600, PMB 6338, Novi MI 48375, within thirty (30) days after service of these requests.

As directed by Rule 36 of the Federal Rules of Civil Procedure, Defendant requests that Plaintiff specifically admit or deny each of the following numbered factual statements in the requests for admission. Plaintiff is advised that if the Court determines that an answer fails to comply with the requirements of Rule 36 of the Federal Rules of Civil Procedure, the Court may order that the request(s) is/are deemed admitted.

Plaintiff shall supplement all of Plaintiff's responses as required by the Federal Rules of Civil Procedure.

## REQUEST FOR CONFERENCE

Pursuant to Federal Rules of Civil Procedure, and any and all applicable Local Rules(s), it is requested that you contact counsel for the requesting party in an effort to resolve by agreement any objections or other disputes which might exist prior to requesting intervention of the Court.

Silver v. NCS (Case No. 1:24-cv-03238-SCJ-JCF) Discovery from National Credit Systems, Inc.

Page 2

## DEFINITIONS

As used in these requests for production of documents, the terms listed below are defined as follows:

(a)     The terms "**requesting party**," "**Defendant**," and "**NCS**" as used herein, shall mean, unless otherwise directed, **National Credit Systems, Inc.,** its successors or predecessors in interest, parent(s), subsidiaries, affiliates, brother-sister companies or related entities, their officers, directors, attorneys, Accountants, agents, servants, employees and all other persons or entities acting or purporting to act on their behalf.

(b)     The terms "you," "your," "Plaintiff," "Frederick O. Silver" as used herein, shall mean, unless otherwise directed, Frederick Silver (i) individually; (ii) his current and former spouse(s), Accountants, attorneys, agents, servants, representatives, and all other persons or entities acting or purporting to act on her behalf, whether authorized or not.

(c)     The term "**Account**," as used herein, shall mean the account for which NCS contacted Plaintiff or attempted to collect from Plaintiff that is allegedly owed to the Original Creditor.

(d)     The term "**Original Creditor**," as used herein, shall refer to Plaintiff's underlying creditor as referenced in ¶ 21 of Plaintiff's Amended Complaint which is located at ECF 7 in this **Lawsuit,** as referenced in subparagraph (e), *infra*.

(e)     The term "Litigation," "Lawsuit," or "suit" as used herein shall mean this Civil Action No. 1:24-cv-03238-SCJ-JCF; FREDERICK SILVER v. NATIONAL CREDIT SYSTEMS, INC, in the United States District Court for the Northern District of Georgia.

(f)     The terms "**document**," and "**documents**" and "**tangible things**" as used herein, shall be given the broadest meaning possible as provided by Federal Rules of Civil Procedure and shall include without limitation, all writings of every kind, including, without limitation, letters, telegrams, memoranda, reports, studies, electronic mail, calendar and diary entries, maps, pamphlets, notes, charts, tabulations, analyses, statistical or information accumulations, audits and associated work papers, any kind of records of meetings or conversations, film impressions, magnetic tape, sound or mechanical reproductions, all stored compilations of information of any kind which may be retrievable (such as, but without limitation, the contents of computer memory or information storage facilities, and computer programs, and any instructions or interpretive materials associated with them), and copies of documents which are not identical duplicates of the originals (e.g., because handwritten or "blind" notes appear thereon or are attached hereto) whether or not the originals are in your possession, custody or control.  The term "document" specifically includes, without limitation, all drafts and preliminary versions of documents.  Any copy of a document containing or having attached thereto alterations, notes, comments, or other material not included in the original or another copy of the document shall be deemed to be a separate document.  **Specifically the terms "document" and "documents" shall include all ESI as defined herein.**

(g)     The terms "**ESI**" and "**electronically stored information**" as used herein, shall mean any and all information that is created, stored, or retrieved and processed in electronic, magnetic, or digital form.  ESI includes, but is not limited to, the following:

   (i.)     (1) databases, (2) data files, (3) program files, (4) image files, (9) system-history files, (10) deleted files, programs, or e-mails, (11) backup files and archival tapes, (12) website files, (13) website information stored in textual, graphical, or audio format, (14) cache files, (15) cookies, and any form contemplated by FED. R. CIV. P. 34.

Sources of ESI include, but are not limited to:

   (ii.)     (1) mainframe computers, (2) network servers, (3) Internet ("web") servers, (4) desktop and laptop computers, (5) hard drives, (6) flash drives, "thumb" drives, secure digital cards, and other flash memory cards, (7) e-mail servers, (8) handheld devices like personal digital assistants (PDAs) and personal media players (PMPs), (9) cell phones and smart phones (e.g. iPhones, BlackBerrys, Windows Mobile devices), (10) event recorders in cars, trucks and trains, (11) medical devices, and (12) global positioning system (GPS) devices.

ESI shall be produced as it is normally maintained—its native file format.  Should such native file format require an image file (such as .pdf or .tif), searchable text file and/or metadata load file to access, view, search, or use the ESI as the responding party can such files shall be included in the production.

(h)     The terms "**communicate**" or "**communication**" as used herein includes, without limitation of its generality, statements, discussions, conversations, meetings, remarks, questions, and answers, whether written, oral or electronic.  The term includes, but is not limited to, every manner or means of disclosure, transfer or exchange, whether face to face and those which are transmitted by any type of service or media, including without limitation, mail, courier, intercoms, telephones, intranet, internet and e-mail.

(i)     The term "**agreement**" as used herein, shall mean any contract, agreement, promise, note, arrangement, including all amendments, supplements and additions thereto.

(j)     The term "**third party**" and "**third parties**" as used herein, unless otherwise indicated, shall mean any natural persons, firms, partnerships, associations, organizations, joint ventures, corporations and any other entities.

(k)     The term "**any**" or "**all**" as used herein, shall mean "**any or all**."

(l)     The terms "**relating to**," "**pertaining to**" or "**concerning**" as used herein, shall mean referring to, reflecting or related in any manner logically, factually, directly or indirectly to the matter discussed.

(m)     The word "**person(s)**" as used herein, shall be deemed to include all natural persons, firms, partnerships, associations, organizations, joint ventures, corporations and any other entities.

Silver v. NCS (Case No. 1:24-cv-03238-SCJ-JCF) Discovery from National Credit Systems, Inc.

Page 4

(n)     The terms "**provide**" or "**provided**" as used herein, shall mean to give, send, make available, deliver, supply, or furnish in any manner.

(o)     Whenever the terms "**and**" or "**or**" are used herein, they are to be interpreted both disjunctively and conjunctively.

(p)     The term "**including**," as used herein, shall mean "**including, but not limited to**."

(q)     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa.  Regardless of the tense employed, all verbs shall be read as applying to the past, present and future as is necessary to make any paragraph more, rather than less, inclusive.

(r)     Words used in the singular herein are also to be interpreted in the plural, and vice versa; words of any gender, include all other genders.

## **INSTRUCTIONS**

(1)     PRODUCTION:  Pursuant to Federal Rule of Civil Procedure 34(b), all documents produced shall be produced as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the Requests for Production.

(2)     OBJECTIONS:

(a) Interrogatories.  Pursuant to Federal Rule of Civil Procedure 33(b), all grounds for an objection to an interrogatory shall be stated with specificity or it is waived.  To the extent an objection is made, the objecting party shall state the reasons for the objection and shall answer to the extent the interrogatory is not objectionable.

(b) Requests for Production.  Pursuant to Federal Rule of Civil Procedure 34(b), all grounds for an objection to a request for production shall be stated with specificity or it is waived.  To the extent an objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

(c) Requests for Admission.  Pursuant to Federal Rule of Civil Procedure 36(a)(4) and (5), in the event you assert any form of objection or privilege as a ground for not answering a request for admission or any part thereof, you are required to set forth the legal grounds and facts upon which the objection or privilege is based. If the objection relates to only part of the request for admission, the balance of the request for admission should be answered in full.

(3)     CLAIMS OF PRIVILEGE: With respect to any document or information which you assert is immune from discovery because of any privilege or work product doctrine, please provide the withholding statement required by Federal Rule of Civil Procedure 26(b)(5), that provides the following:

"[M]ake the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties assess the applicability of the privilege or protection."

(4)    <u>POSSESSION, CUSTODY & CONTROL</u>: You are required to produce all documents and tangible things that are within your possession, custody or control, which means that you either have physical possession of the item or have a right to possession of that item that is equal to or superior to the person who has physical possession of the item.

(5)    <u>EXTENSIONS OF TIME</u>:  Any agreement for extension of time to respond to these Requests for Production must be in writing.  No extensions of time for making objections to these discovery requests should be presumed unless such agreement is specifically set out in writing.

(6)    <u>LOST OR DESTROYED DOCUMENTS</u>:  If any document herein requested was previously in your possession, custody, or control and has been lost or destroyed, you are requested to submit, in lieu of each document, a written statement, which:

1.  Reasonably describes in detail the nature of the document and its content;
2.  Identifies the person who prepared or authorized the document, and, if applicable, the person to whom the document was sent;
3.  Specifies the date on which the document was prepared or transmitted or both; and
4.  Specifies, if possible, the date on which the document was lost or destroyed, and, if destroyed, the conditions of or reasons for, such destruction and the persons requesting and performing the destruction.

(7)    <u>IDENTIFY</u>:  In those instances where the word "identify," is used in these requests for discovery, it should be interpreted as requiring with respect to <u>individuals</u>, the person's name, last known address and telephone number.  With respect to <u>documents or things</u>, it should be interpreted requiring sufficient information regarding the item so that the party seeking discovery can locate and identify the object as readily as the party from whom it is being sought (including such information as the type of document (e.g., letter memorandum, telegram, chart, computer input or printout, e-mail, photograph, sound reproduction, etc.), date of the document, author of the document, where the document is located or the last known custodian of the document and whether the document is in existence, lost or destroyed).  With respect to <u>entities</u>, it should be interpreted to require, the name of the entity, the entities' last known address and telephone number, and the name, address and telephone of any known officers or related entities of the entity.

(8)    <u>REFERENCE TO DOCUMENTS</u>:  In those instances where the responding party chooses to answer a request for information by referring to a specific document or record, it is requested that such specification be in such sufficient detail to permit the requesting party to locate and identify the records and/or documents from which the answer is to be ascertained, as readily as can the party served with the request.

(9)    <u>COMPUTER BASED INFORMATION</u>:  In those instances where requested information is stored only on software or other data compilations, the responding party should either produce the raw data along with all codes and programs for translating it into usable form or produce the information in a finished usable form, which would include all necessary glossaries, keys and indices for interpretation of the material.

(10)    <u>DOCUMENT DESTRUCTION</u>:  It is requested that all documents and/or other data compilations which might impact on the subject matter of this litigation be preserved and that any ongoing process of document destruction involving such documents cease.

(11)    <u>LIMITATION AS TO TIME</u>:  Unless otherwise indicated, these requests cover any document or information prepared, received, distributed, or in effect during the time period of two years prior to suit being filed to the date of trial.

## **<u>INTERROGATORIES</u>**

**<u>INTERROGATORY NO. 1</u>:**    Itemize all damages [i.e. statutory, economic/actual, consequential, special, exemplary, attorneys' fees and/or costs] that you contend you have sustained as a result of the allegations in the Complaint <u>and</u> provide (a) the specific injury or category of damages and dollar amount of damages claimed; (b) the basis or method used to calculate such amounts; (c) a description of any documentation that you contend supports such damages; and (d) the names of all persons, whether lay or expert, who will provide testimony supporting each such category of damages.

**<u>ANSWER</u>:**

**<u>INTERROGATORY NO. 2</u>:**  Are you claiming any additional damages, losses or expenses, whether economic or otherwise, from NCS?  If so, state in detail the nature and amount of such additional losses or expenses, explain how you calculated these amounts, and identify any documents or other evidence which support such additional damages, losses or expenses as well as any witnesses you expect to testify in support of such damages.

**<u>ANSWER</u>:**

**INTERROGATORY NO. 3:** Please state with specificity the number of calls you or your household received from NCS, the dates of each such calls, the phone number that received such call, whether a voicemail was left as a result of the call, or whether you (or anyone else) spoke with NCS for each call.

**ANSWER:**

**INTERROGATORY NO. 4:** Describe with specificity all communications that you have ever had with NCS in connection with the collection of the subject Account, including in your response the (a) date and time of the communication, (b) manner of all such communications (in person, phone, email, text, otherwise), (c) the complete substance of such communications, (d) the identity of the persons who participated in or witnessed such communications, and (e) an identification of all documents that constitute, or refer or relate to, such communications (such as notes, calendar, entries, phone or service provider statements, call logs, screen shots, etc.).

**ANSWER:**

**INTERROGATORY NO. 5:** Please list and identify each and every statute, ordinance, code, regulation, or law, if any, which you contend was violated, either in whole or in part, by NCS regarding its actions or communications with you. For each such statute, ordinance, code, regulation, or law identified, please specifically describe the facts and identify the documents upon which you will rely to allege any such violation.

**ANSWER:**

**INTERROGATORY NO. 6:** Please state all facts and identify all documents to support your contention that NCS violated the FCRA.

**ANSWER:**

**INTERROGATORY NO. 7:**  Please state all facts and identify all documents to support your contention that NCS violated the FDCPA.


**ANSWER:**


**INTERROGATORY NO. 8:**  Identify all names Plaintiff and any of their spouses have used, and the time periods in which each such listed name was used.


**ANSWER:**


**INTERROGATORY NO. 9:**. Identify all addresses where Plaintiff has lived during the last ten (10) years and the date range during which you lived at each address.


**ANSWER:**


**INTERROGATORY NO. 10:**  Identify with specificity any loans or lines of credit Plaintiff attempted to apply for or did apply for in a ten (10) year period preceding the filing of this litigation, and the specific results of each such application


**ANSWER:**


**INTERROGATORY NO. 11:**  If you have denied any portion (or admitted with a qualification) any of Defendant's Requests for Admission propounded to you, please state all facts and identify all documents that support each denial.


**ANSWER:**


**INTERROGATORY NO. 12:** For each and every paid position that Plaintiff has held during the last ten (10) years, please provide the: (a) employer name, (b) mailing address, (c) phone number, (d) job title, and (e) dates of employment.


**ANSWER:**

Silver v. NCS (Case No. 1:24-cv-03238-SCJ-JCF) Discovery from National Credit Systems, Inc.

Page 9

**INTERROGATORY NO. 13:** Has Plaintiff ever been convicted of a crime (by way of a no-contest or guilty plea, trial or otherwise)? If so, please list the charge, the jurisdiction in which they were charged and the date of such conviction.

**ANSWER:**


**INTERROGATORY NO. 14:** For any threatened and/or actual litigation (including Criminal matters and Bankruptcy filings) that you have been a party to during the last fifteen (15) years, please provide the: (a) names of the parties involved; (b) case number and filing date, if applicable; (c) and the outcome of such matter (i.e. dismissed, settled, pending, judgment entered). This interrogatory specifically includes any demand or complaints made by you or your attorney or other agent to any creditor, debt collector, or collection agency.

**ANSWER:**


**INTERROGATORY NO. 15:** Please list the name, business address and telephone number of every physician, medical doctor, osteopath, dentist, hospital, clinic, radiologist, therapist, psychologist, psychiatrist, counselor, chiropractor, emergency room, medical care provider and any other practitioner of the healing arts with whom Plaintiff consulted or by whom Plaintiff have been examined or treated for any reason in the last ten (10) years, and as to each, state:

    (a)    The dates of each consultation, examination or treatment; and
    (b)    The reason for the consultation, examination or treatment.

**ANSWER:**


**INTERROGATORY NO. 16:** Please state the name, address, and telephone number and medical specialty of each and every physician, surgeon, and/or other healthcare practitioner who treated or examined Plaintiff as a result of any injury, complaint, or ailment you allege was caused by NCS. For each person or entity identified in answering this Interrogatory, please state the respective date or dates, reasons for such treatment or examination, diagnosis made, and the charges of each such treatment and/or examination.

**ANSWER:**

**INTERROGATORY NO. 17:**  If Plaintiff have been examined or treated by any physician, medical doctor, osteopath, dentist, hospital, clinic, radiologist, therapist, psychologist, psychiatrist, counselor, chiropractor, emergency room, medical care provider and any other practitioner of the healing arts on or after the date of NCS's actions alleged by you, for any injury, illness, disease or complaint allegedly resulting from NCS's conduct, please state the following:

        (a) The name, business address and telephone number of each such person or entity;
        (b) The dates of each consultation, examination or treatment;
        (c) The reason for the consultation, examination or treatment; and
        (d) The cost for the consultation, examination or treatment.

**ANSWER:**

**INTERROGATORY NO. 18:**  Identify any and all medications that you have taken since January 01, 2020 (including the dosage and reasons for such medication) regardless of whether such mediation is prescription or over the counter.

**ANSWER:**

**INTERROGATORY NO. 19:**  Specifically identify all liens, credit denials, housing application denials, negative credit impacts, or other unfavorable terms you allege to have incurred as a result of NCS's conduct.

**ANSWER:**

**INTERROGATORY NO. 20:**  Describe with specificity the circumstances of your initial move in to the home referenced in ¶ 21 of your complaint.  When did you move in?  Who did you reside with in the apartment?

**ANSWER:**

**INTERROGATORY NO. 21:**  Describe with specificity the circumstances of your departure from the home referenced in ₱ 21 of your complaint. When did you move out?  Who, if anyone, remained behind in the apartment?  Was there any kind of written arrangement or documentation from any employee or representative of the apartments releasing you from your obligations under the lease?

**ANSWER:**

**INTERROGATORY NO. 22:**  Please provide the full name (including any aliases), address (home and business), telephone number (home, mobile, and business), last four digits of social security number, and driver's license number and title of each person who furnished information contained in your responses or assisted in preparation of your responses to these interrogatories, including who provided which information.

**ANSWER:**

**INTERROGATORY NO. 23:**  Fully identify and provide all complete and current contact information for "Gina" whom is listed as the Emergency Contact on your rental application with a phone number of (702) 350-8681.

**ANSWER:**

**INTERROGATORY NO. 24:**  Identify all digital means of contact (including phone numbers, email addresses, social media usernames and profiles) Plaintiff has used from January 01, 2015 to present day.

**ANSWER:**

**INTERROGATORY NO. 25:** Identify all prompts, questions, or requests you submitted to ChatGPT or any other generative AI platform at any time from January 1, 2023 through the present concerning:
- Any aspect of the debt allegedly owed to National Credit Systems, Inc.;
- Debt collection generally;

- Disputes under the Fair Debt Collection Practices Act (FDCPA);
- Disputes or verification under the Fair Credit Reporting Act (FCRA);
- Your alleged damages;
- Communications with credit bureaus, creditors, or debt collectors;
- Any legal documents, templates, or letters that you drafted or sent;
- Any communication sent or received from National Credit Systems, Inc.;
- The lawsuit filed in this matter.

Your answer should include:

a) The full prompt(s) or input(s) submitted to the AI platform;
b) The full response(s) received from the AI platform;
c) The date(s) the prompt(s) and response(s) occurred;
d) The identity of any person (other than yourself) who submitted or viewed the prompt(s) or response(s); and
e) Whether you relied on the response(s) in drafting any document or communication, and if so, identify each such document or communication.

**ANSWER:**


## REQUESTS FOR PRODUCTION

1.    All documents identified in your answers to any Interrogatories in this suit.

2.    All documents that you consulted or used to respond to any Interrogatories or Rule 26 Disclosures in this suit.

3.    All documents establishing, referring or relating to all persons who have personal knowledge of facts concerning this action or the subject matter of this action, and/or the substance of those facts.

4.    All documents which relate to, refer to or support your claims set forth in the Complaint, including any amendments thereto.

5.    All documents that specifically reference the rental account related to the home referenced in ¶ 21 of your complaint.

6.    All documents that refer or relate to communications between you and the Original Creditor related to the rental account related to the home referenced in ¶ 21 of your complaint.

7.    All documents that refer or relate to communications between you and NCS.

8.    All documents that refer or relate to communications between you and any other person regarding NCS.

9.      All documents received from the Original Creditor.

10.     All documents received from NCS.

11.     Any and all documents referencing or relating to NCS.

12.     Any financial documents indicating rent payments related to the home referenced in ¶ 21 of your complaint.

13.     All documents demonstrating and/or evidencing any damages claimed by you in this lawsuit.

14.     All consumer reports, credit reports, credit summaries, or other documents specifying your credit history or credit score.

15.     Any and all documents reflecting past due balances, since January 01, 2020, including but not limited to, invoices, mortgage statements, car loans, utilities, credit cards, cable/satellite records, etc.

16.     All disputes or communications related to the rental account related to the home referenced in ¶ 21 of your complaint which you provided to any third party, including any Consumer Reporting Agency or governmental agency.

17.     All loan applications that you have filled out or submitted in the past five (5) years.

18.     All housing applications for mortgages that you have filled out or submitted in the past five (5) years.

19.     All housing applications for your tenancy in a rental home that you have filled out or submitted in the past five (5) years.

20.     All documents reflecting or concerning any investigation you conducted prior to the filing of the Complaint.

21.     All bills, invoices and/or receipts for drugs or medications incurred by you as a result of actions alleged in the Complaint, including any amendments thereto.

22.     Copies of all Documents that you intend to rely upon in this matter to support the allegations in your Complaint, including but not limited to, any letters, credit reports or other correspondence between you, Defendant and/or any other person or entity.

23.     All medical records which are related to NCS's alleged actions or conduct and treatment by any health care provider for injuries which you claim are related to the incidents giving rise to this litigation or NCS's alleged actions or conduct.

24.     All bills, invoices and/or receipts for medical treatment and/or services alleged by incurred by you as a result of the incidents giving rise to this litigation or NCS's alleged actions or conduct.

25.     All records of payments made by any third-party payor as a result of the incidents giving rise to this litigation or NCS's alleged actions or conduct.

26.     All documents furnished to any third-party payor as proof of any alleged injuries sustained by you as a result of the incidents giving rise to this litigation or NCS's alleged actions or conduct.

27.     All documents reflecting or relating to any element of damage you have claimed in your Petition or Disclosure Responses (including any amendments to either), including, but not limited to:

    (a)    Economic damages, including, without limitation, any actual damages resulting from loss of credit, increased interest charges, denial of credit, increased credit scores, etc.;

    (b)    Loss of earnings or earnings capacity;

    (c)    Medical expenses in the past (and expected in the future);

    (d)    Mental Anguish;

    (e)    Permanent bodily impairment;

    (f)    Physical pain and suffering in the past and future; and

    (g)    Any other loss or damage of any type or nature.

28.     All records regarding statutory liens, hospital liens and/or notices of lien or subrogation rights pertaining to any claim by any person, entity and/or governmental agency asserting any rights to recover any expenses arising out of the incident or your alleged damages.

29.     All documents relating or reflecting care by health care providers for the last ten (10) years that was provided to Plaintiff.

30.     All summaries, notes, reports, calendar or journal entries, or other documents connected with or related in any way to this Litigation, or the incidents giving rise to this Litigation or NCS's alleged actions, omissions, or conduct.

31.     All photographs, moving pictures, films, videotapes, graphic reproductions, slides, models, drawings, graphs, charts and audio recordings that are connected with or related in any way to this Litigation or the incidents made the basis of this Litigation.

32.     All diaries, calendars and/or other lists or notes kept by you and/or your relatives and/or your friends regarding or related in any way to the incidents giving rise to this litigation and/or events thereafter.

33. All invoices for services, expenses or otherwise related to this Litigation, specifically including, without limitation, attorneys' fees invoices or statements and experts' invoices or statements.

34. All documents, including invoices, letters, and draft templates, that you received from any consumer reporting agency, credit repair company, or similar person or entity that you engaged or hired to assist you with any credit issues.

35. Complete copies of your federal and state income tax returns for the past 5 years, including all schedules, attachments, and addendums filed with each return.

36. All statements made by persons not a party to this lawsuit, either written, recorded or otherwise, that pertain to the incident made the basis of this Litigation.

37. All statements made by any employees, agents and/or representatives of NCS, either written, recorded or otherwise, that pertain to the actions, conduct or omissions made the basis of this Litigation.

38. All correspondence and documents authored by NCS and/or NCS's employees, agents and/or representatives which relate to Plaintiff's allegations in this Litigation.

39. All correspondence and documents sent by Plaintiff and/or Plaintiff's representatives and/or agents to NCS or NCS's employees, agents or representatives.

40. Copies of your Social Security card and driver's license.

41. Any and all formal and informal reports and/or documents prepared by an officer or employee of any law enforcement agency or other governmental agency or that you submitted to any such agency which pertain, in any way, to the incidents made the basis of this Litigation.

42. All laws, regulations, ordinances, standards which you contend or will contend at trial that NCS has violated with respect to the subject matter of this Litigation.

43. Any exhibits which you may offer into evidence upon trial of this case.

44. Any factual observations, tests, supporting data, calculations, photographs or opinions of any expert who may be called as a witness. The requesting party requests that you cause any expert witnesses to reduce their opinions to a tangible form and produce said experts' reports.

45. Any factual observations, tests, supporting data, calculations, photographs or opinions of any consulting expert whose opinions, calculations, tests or other work has been reviewed by any expert who may be called as a witness at trial. The requesting party requests that you cause any expert witnesses to reduce their opinions to a tangible form and produce said experts' reports.

46.     Any and all correspondence between you and any person who may be called as an expert witness.

47.     Any and all correspondence between you and any person who may be called as a fact witness.

48.     Curriculum vitae and bibliographies for all of your expert witnesses.

49.     All models, exhibits and/or other visual aids that any expert witness may utilize at the time of trial.

50.     All published treatises, periodicals, books and/or pamphlets, on any subject matter related to this case, that you claim to be reliable authority which may be used at the time of the trial.

51.     All documents and/or tangible items that support the allegations of the Complaint and any amendments thereto.

52.     If Plaintiff is asserting any claims for mental anguish damages, a signed Authorization permitting the full disclosure of all medical records pertaining to Plaintiff.

53.     A signed Release of Information Authorization permitting the full disclosure of all medical records of any and each individual healthcare provider(s) who treated Plaintiff for any conditions you believe NCS caused or exacerbated.

54.     A copy of your most recent resume.

55.     **Produce all documents, records, screenshots, transcripts, printouts, or other materials reflecting any and all prompts, inputs, questions, or requests submitted by you or on your behalf to any version of ChatGPT (including but not limited to OpenAI's GPT-3.5, GPT-4, or any related chatbot interface) relating in any way to:**

   a) The debt associated with Apartment 433 at 1475 Benton Boulevard, Pooler, Georgia;
   b) Debt collection more broadly, including questions about debt validation, FDCPA rights, or disputing a debt;
   c) National Credit Systems, Inc., or any communication or reporting involving NCS;
   d) Credit reporting disputes, strategies, or letter drafting;
   e) Preparation of any communication, document, demand, or court filing that you submitted to any third party (including credit reporting agencies, debt collectors, or courts);
   f) Any alleged emotional or financial harm arising from debt collection or credit reporting activities.

This request includes, but is not limited to, documents or screenshots showing:
   • The original prompt or request submitted to ChatGPT;
   • The full response(s) generated by ChatGPT;
   • Any follow-up prompts or clarifications exchanged with the chatbot; and

- The date and platform (web, app, API, or third-party service) through which ChatGPT was accessed.

This Request further includes all such materials created or accessed at any time from January 1, 2024, through the present, regardless of whether they were printed, downloaded, saved, or merely viewed.

## REQUESTS FOR ADMISSIONS

The requests for Plaintiff to admit or deny, are as follows:

1. Admit that Plaintiff entered into a rental contract for the home referenced in ¶ 21 of your complaint that required you to pay rent for your tenancy.

2. Admit that Plaintiff on May 08, 2022 signed a rental contract with Mid-America Apartments, L.P. to rent the home referenced in ¶ 21 of your complaint.

3. Admit that Plaintiff on May 08, 2022 signed a rental contract with Mid-America Apartments, L.P. to rent Apartment 433 at 1475 Benton Boulevard, Savannah, GA 31407.

4. Admit that Plaintiff on May 08, 2022 signed a rental contract with Mid-America Apartments, L.P. to rent Apartment 433 at 1475 Benton Boulevard, Pooler, GA 31322.

5. Admit that you have never lived at Apartment 433 at 1475 Benton Boulevard, Pooler, GA 31322.

6. Admit that you leased Apartment 433 at 1475 Benton Boulevard, Pooler, GA 31322 with the intent to rent it out to tenants for financial gain.

7. Admit that Plaintiff's signature appears below on a document acknowledging the Fitness Center Rules and Regulations, which he signed at the commencement of tenancy at Apartment 433 at 1475 Benton Boulevard:

Silver v. NCS (Case No. 1:24-cv-03238-SCJ-JCF) Discovery from National Credit Systems, Inc.

Page 18

**Fitness Center Rules and Regulations**

- The fitness center is open 24 hours/ 7 days of the week.
- Residents must keep doors locked at all times during visit and usage
- Resident will not admit anyone in the fitness center who has not registered with the clubhouse office team
- Anyone under the age of 18 must be accompanied by an adult, the leaseholder.
- Leaseholder must accompany their guest at all times.
- Residents and guest will adhere to the rules and regulations posted in the fitness center, if rules are not followed management may revoke your access to the amenity.

Resident Signature _____ Date _5/16/2022_

8.  Admit that Plaintiff's signature appears below on a document acknowledging a Move-In Inspection Report, which he signed at the commencement of tenancy at Apartment 433 at 1475 Benton Boulevard:

> Resident hereby acknowledges receipt of this completed
> Move-In/Move-Out Inspection Report prior to taking
> occupancy of the apartment and accepts this Report as true,
> accurate, and complete.
>
> _____  _5/16/2022_
> **Resident Signature**        **Date**

9.  Admit that Plaintiff's signature and initials appear below on a document acknowledging Rental Payment Procedures, which he signed at the commencement of tenancy at Apartment 433 at 1475 Benton Boulevard:

- If we must file for eviction 2 times within your lease contract, we will proceed with the eviction process. Any payment by the resident will not stop the eviction process after the 2nd time of filing. _SP_, _____, _____
- We reserve the right to non-renew your lease based upon your payment history. You will be notified in writing if management elects to non-renew. _____, _____, _____

Resident Signature: _____ Date:_ 5/16/2022

10. Admit that Plaintiff did not comply with the Rental Payment Procedures which were presented to him for signature on May 16, 2022.

11. Admit that Plaintiff failed to make all rent payments during his tenancy at Apartment 433 at 1475 Benton Boulevard.

12. Admit that prior to discontinuing rental payments, Plaintiff never obtained a legal judgment from a court stating he could stop paying rent for his tenancy at Apartment 433 at 1475 Benton Boulevard.

13. Admit that prior to discontinuing rental payments, Plaintiff never obtained a binding decision in his favor from a State housing authority or any other such Arbiter who would have the authority to make such a decision stating he could stop paying rent for his tenancy at Apartment 433 at 1475 Benton Boulevard.

14. Admit that in a proceeding in state court, Plaintiff was evicted from Apartment 433 at 1475 Benton Boulevard.

15. Admit that in a proceeding in state court, the occupants of Apartment 433 at 1475 Benton Boulevard were evicted for nonpayment of rent.

16. Admit that Plaintiff rented Apartment 433 at 1475 Benton Boulevard with the intent of renting or leasing it to a third party.

17. Admit Plaintiff did not utilize Apartment 433 at 1475 Benton Boulevard as a personal full time residence.

18. Plaintiff never actually submitted an application for any line(s) of credit in the time period from when he departed Apartment 433 at 1475 Benton Boulevard up to the date of filing the complaint.

19. Plaintiff never actually submitted an application for any line(s) of credit in the time period from when he was evicted from Apartment 433 at 1475 Benton Boulevard up to the date of filing the complaint.

20. Plaintiff does not know whether or not his credit was negatively impacted by the reporting of the rental debt associated with Apartment 433 at 1475 Benton Boulevard, because no credit applications were submitted.

21. Plaintiff was never denied any line(s) of credit in the time period from when he was evicted from Apartment 433 at 1475 Benton Boulevard up to the date of filing of this lawsuit.

22. Plaintiff was never denied any line(s) of credit in the time period from when he departed Apartment 433 at 1475 Benton Boulevard up to the date of filing of this lawsuit.

23. Admit NCS employees communicated with Plaintiff during the dispute process.

24. Admit Plaintiff participated in a phone call with an NCS representative on June 24, 2024, during which an advisement was given that the phone call would be recorded.

25. Admit that during the recorded phone call with NCS on June 24, 2024, the NCS representative repeatedly asked Plaintiff if he was disputing the debt.

26. Admit that during the recorded phone call with NCS on June 24, 2024 the Plaintiff never stated or affirmed that he was disputing the debt.

27. Admit that during the recorded phone call with NCS on June 24, 2024 the Plaintiff never asked NCS to cease communications with him.

28. Admit that during the recorded phone call with NCS on June 24, 2024, the Plaintiff never stated the debt did not belong to him.

29. Admit that during the recorded phone call with NCS on June 24, 2024 the Plaintiff never stated that he was the victim of identity theft.

30. Admit that during the recorded phone call with NCS on June 24, 2024, the NCS representative e-mailed verification documents for the debt to an email address Plaintiff confirmed was his.

31. Admit that you did not submit a written dispute regarding the debt associated with Apartment 433 at 1475 Benton Boulevard to Trans Union prior to July 10, 2024.

32. Admit that you did not submit a written dispute regarding the debt associated with Apartment 433 at 1475 Benton Boulevard to Equifax prior to July 10, 2024.

33. Admit that you did not submit a written dispute regarding the debt associated with Apartment 433 at 1475 Benton Boulevard to Experian prior to July 10, 2024.

34. Admit that you did not submit a written dispute regarding the debt associated with Apartment 433 at 1475 Benton Boulevard to Trans Union prior to filing this lawsuit.

35. Admit that you did not submit a written dispute regarding the debt associated with Apartment 433 at 1475 Benton Boulevard to Equifax prior to filing this lawsuit.

36. Admit that you did not submit a written dispute regarding the debt associated with Apartment 433 at 1475 Benton Boulevard to Experian prior to filing this lawsuit.

37. Admit that you never submitted a written dispute regarding the debt associated with Apartment 433 at 1475 Benton Boulevard to Experian.

38. Admit that you never submitted a written dispute regarding the debt associated with Apartment 433 at 1475 Benton Boulevard to Equifax.

39. Admit that you never submitted a written dispute regarding the debt associated with Apartment 433 at 1475 Benton Boulevard to TransUnion.

40. Admit that you received a letter from National Credit Systems, Inc. dated June 10, 2024, notifying you of the debt associated with Apartment 433 at 1475 Benton Boulevard.

41. Admit that you did not submit a written dispute to National Credit Systems, Inc. within 30 days following the receipt of the letter dated June 10, 2024.

42. Admit that you received an e-mailed letter from National Credit Systems, Inc. on June 19, 2024, notifying you of the debt associated with Apartment 433 at 1475 Benton Boulevard.

43. Admit that you did not submit a written dispute to National Credit Systems, Inc. within 30 days following the receipt of the e-mailed letter dated June 19, 2024.

44. Admit that, during communications with National Credit Systems, Inc., you refused to confirm or state whether you were disputing the debt associated with Apartment 433 at 1475 Benton Boulevard.

45. Admit that you did not send a written request for validation or verification of the debt to National Credit Systems, Inc. prior to July 10, 2024.

46. Admit that you did not send a written request for validation or verification of the debt to National Credit Systems, Inc. prior to filing this lawsuit.

47. Admit that you did not send a written request for validation or verification of the debt to National Credit Systems, Inc. after July 10, 2024.

48. Admit that you have no evidence that National Credit Systems, Inc. received any Automated Consumer Dispute Verification (ACDV) from any credit reporting agency regarding the debt prior to the first filing in this matter on July 22, 2024.

Silver v. NCS (Case No. 1:24-cv-03238-SCJ-JCF) Discovery from National Credit Systems, Inc.

Page 22

49. Admit that you did not provide National Credit Systems, Inc. with any documentation prior to July 10, 2024, demonstrating that the debt associated with Apartment 433 at 1475 Benton Boulevard was inaccurate or invalid.

50. Admit that, prior to filing this lawsuit, you did not provide National Credit Systems, Inc. with any documentation demonstrating that the debt associated with Apartment 433 at 1475 Benton Boulevard was inaccurate or invalid.

51. Admit that you have no evidence that National Credit Systems, Inc. failed to mark the debt as disputed in its internal records after your verbal communication on June 24, 2024.

52. Admit that you have no evidence that National Credit Systems, Inc. failed to report the debt as disputed to the credit reporting agencies after your verbal communication on June 24, 2024.

53. Admit that National Credit Systems, Inc. reported the debt as disputed to the credit reporting agencies after your verbal communication on June 24, 2024.

54. Admit that you did not inform National Credit Systems, Inc. in writing that you were a victim of identity theft related to the debt associated with Apartment 433 at 1475 Benton Boulevard.

55. Admit that you have no documentation showing that you notified the original creditor that the debt associated with Apartment 433 at 1475 Benton Boulevard was inaccurate prior to the initiating this litigation on July 22, 2024.

56. Admit that you have no evidence that National Credit Systems, Inc. initiated collection efforts on the debt without first obtaining verification from the original creditor.

57. Admit that you have no evidence that National Credit Systems, Inc. continued collection efforts on the debt without first obtaining verification from the original creditor.

58. Admit that you have no evidence that National Credit Systems, Inc. made any false or misleading representations to you in connection with the debt collection efforts prior to or after the filing of the Amended Complaint on October 24, 2024.

59. Admit that at no point prior to the filing of your Complaint did you send National Credit Systems, Inc. a written notice stating that you disputed the validity of the debt.

60. Admit that you never stated in writing to National Credit Systems, Inc. that the debt did not belong to you.

61. Admit that you never stated in writing to National Credit Systems, Inc. that you believed the debt had been paid or settled.

62. Admit that you never submitted a police report related to identity theft regarding the debt associated with Apartment 433 at 1475 Benton Boulevard.

63. Admit that you never submitted an FTC identity theft report regarding the debt associated with Apartment 433 at 1475 Benton Boulevard.

64. Admit that at no time before July 10, 2024, did you provide National Credit Systems, Inc. with a statement in writing that you were the victim of identity theft.

65. Admit that during your June 24, 2024 phone call with National Credit Systems, Inc., you stated that you did not care if anyone investigated your dispute.

66. Admit that during your June 24, 2024 phone call with National Credit Systems, Inc., you stated that you did not wish to receive communications by phone or email, but did not state that such communications were at an inconvenient time or place.

67. Admit that you did not include the term "validation" or "verification" in any written communication to National Credit Systems, Inc. prior to July 10, 2024.

68. Admit that you previously applied for rental housing using an address different than your personal residence.

69. Admit that your Complaint includes allegations that are materially false, including that you never applied for or rented Apartment 433 at 1475 Benton Boulevard.

70. Admit that the email asclv1@gmail.com belongs to plaintiff.

71. Admit that the email asclv1@yahoo.com belongs to plaintiff.

72. Admit that the amount NCS attempted to collect is still due and owing to the Original Creditor.

73. Admit that the balance claimed by the Original Creditor is due and owing.

74. Admit that as of the date Plaintiff's Complaint was filed, the Account has not been paid.

75. Admit that Plaintiff owes the Original Creditor money.

76. Admit that you have been deemed a vexatious litigant in multiple jurisdictions.

77. Plaintiff does not have any documents evidencing that he has any actual damages.

78. Plaintiff does not have any documents evidencing that he has suffered any emotional and/or mental anguish damages.

79. Admit that you have not been examined by a medical doctor, psychologist, mental health professional, spiritual advisor or counselor as a result of the events which form the basis of this litigation.

80. Admit that no medical professional has examined you to treat or diagnose any condition caused by the events which form the basis of this litigation.

81.  Admit that you have not incurred any expenses in connection with medical, spiritual, or counseling treatment resulting from the events which form the basis of this litigation.

82. NCS did not cause any telephone of Plaintiff to ring repeatedly or continuously.

83. NCS did not verbally abuse Plaintiff during any telephone call or message.

84. NCS did not harass Plaintiff during any telephone call or message.

85. You have not suffered any emotional and/or mental anguish as a result of Defendant's efforts to collect on the Account.

86. You have not suffered any actual damages as a result of Defendant's efforts to collect on the Account.

87. Admit that you have suffered no damages as a result of any action by NCS.

88. Admit that you have suffered no out-of-pocket expenses as a result of any action by NCS.

89. Admit that you have not sought medical treatment for any of the damages alleged in the Complaint.

90. Admit that you have paid no attorney's fees in relation to this action.

91. Admit that you have paid no costs in relation to this action.

92. Admit that at least one Court has declared Plaintiff a vexatious litigant in the past due to his propensity to file frivolous legal actions.

93. Admit that at least one Court has declared Plaintiff must receive prior authorization from a judge prior to filing a legal action.

94. Admit that this legal action against NCS is frivolous.

95. Admit plaintiff never lodged a dispute directly with NCS.

96. Admit that following Plaintiff's first and only phone call where he spoke with NCS, the NCS employee reported the debt as disputed.

97. Admit that NCS ceased collection efforts upon receiving notice of Plaintiff's dispute and awaited verification before resuming.

98. Admit that NCS accurately reported the account status to the CRAs as of the time of each report.

99. Admit that Plaintiff has no evidence NCS failed to follow its standard policies and procedures for handling consumer disputes.

100.    Admit that Plaintiff has no documents or recordings showing that NCS used profane, abusive, or harassing language in any communication.

101.    Admit that Plaintiff cannot identify a single false or misleading statement made by NCS in connection with the collection of the account.

102.    Admit plaintiff refused to have substantive conversations regarding the debt with NCS agents or employees over the phone.

103.    Admit plaintiff did not have substantive conversations regarding the debt with NCS agents or employees over the phone.

104.    Admit that Plaintiff never submitted any documents directly to NCS that indicated he did not owe the amount NCS attempted to collect.

105.    Admit that Plaintiff never submitted any documents to the credit bureaus that indicated he did not owe the amount NCS attempted to collect.

106.    Admit Plaintiff never submitted any documents to the original creditor that indicated he did not owe the amount NCS attempted to collect.

107.    Admit that you have no evidence that the Defendant violated the Fair Debt Collection Practices Act.

108.    Admit that you have no evidence that the Defendant willfully violated the Fair Credit Reporting Act.

109.    Admit that you have no evidence that the Defendant negligently violated the Fair Credit Reporting Act.

110.    Admit that you used ChatGPT or a similar AI-based platform to generate a draft letter or template related to the debt alleged in this lawsuit.

111.    Admit that you used ChatGPT or a similar AI-based platform to draft a dispute letter regarding the debt at issue in this case.

112.    Admit that you used ChatGPT or a similar AI-based platform to research the Fair Debt Collection Practices Act (FDCPA).

113.    Admit that you used ChatGPT or a similar AI-based platform to research the Fair Credit Reporting Act (FCRA).

114.    Admit that you used ChatGPT or a similar AI-based platform to draft or revise the Complaint in this lawsuit.

115.     Admit that you used ChatGPT or a similar AI-based platform to draft or revise any communication to any credit reporting agency related to the debt in this matter.

116.     Admit that you submitted at least one prompt to ChatGPT asking how to dispute a debt with a collection agency.

117.     Admit that you submitted at least one prompt to ChatGPT asking how to claim emotional distress damages related to debt collection.

118.     Admit that you submitted at least one prompt to ChatGPT asking how to allege a violation of the FDCPA or FCRA.

119.     Admit that you submitted at least one prompt to ChatGPT asking how to file a lawsuit or complaint against a debt collector.

120.     Admit that the dispute letter you sent to National Credit Systems, Inc. was based in whole or in part on a ChatGPT-generated or AI-generated template.

121.     Admit that you did not independently verify the legal accuracy of any content generated by ChatGPT before relying on it to assert claims in this lawsuit.

122.     Admit that you did not consult with an attorney prior to filing the Complaint in this matter.

123.     Admit that you have no legal training or education in the Fair Debt Collection Practices Act or Fair Credit Reporting Act.

124.     Admit that you relied on ChatGPT or other online tools in preparing any document filed in this case.

125.     Admit that no attorney reviewed the Complaint before you filed it.

126.     Admit that you did not review any caselaw prior to filing your claims for alleged FDCPA or FCRA violations.

127.     Admit that you did not review any statutes prior to filing your claims for alleged FDCPA or FCRA violations.

Silver v. NCS (Case No. 1:24-cv-03238-SCJ-JCF) Discovery from National Credit Systems, Inc.

Page 27

Respectfully submitted,

/s/ Katrina DeMarte
Katrina DeMarte, Esq.
MI Bar No. P81476
CO Bar No. 43135
GA Bar No. 821011
DeMarte Law, PLLC
39555 Orchard Hill Pl.,
Ste. 600 / PMB 6338
Novi, Michigan 48375
katrina@demartelaw.com
(313) 509-7047

Counsel for Defendants National Credit
Systems, Inc.


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing was served on the *pro se* Plaintiff via traceable postal mail at his address of record in this litigation on this the 7th day of August, 2025.


*/s/ Katrina DeMarte*