FREDERICK SILVER
21905 MOUNTAIN HWY E UNIT 4143,
SPANAWAY, WA 98387-7583
E-mail: ASCLV1@gmail.com
Tel: (702) 473-0365



# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA.
## ATLANTA DIVISION.

| | |
|---|---|
| FREDERICK SILVER<br>Plaintiff,<br>vs.<br>NATIONAL CREDIT SYSTEMS, INC.;<br>MID-AMERICA APARTMENT<br>COMMUNITIES, INC., A Brad Hill as CEO,<br>A CLAY HOLDER as CFO,<br>LESLIE WOLFGANG as Secretary.<br>Defendants. | CASE NO: 1:24-cv-03238<br>District Judge: Steve C Jones<br>Magistrate Judge: Anna W. Howard<br>MOTION. |

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST NATIONAL CREDIT SYSTEMS, INC.

Plaintiff Frederick O. Silver ("Plaintiff"), moves for **partial summary judgment** under Fed. R. Civ. P. 56 against Defendant National Credit Systems, Inc. ("NCS") on Plaintiff's Fair Credit Reporting Act ("FCRA") and Fair Debt Collection Practices Act ("FDCPA") claims, or in the alternative on specific elements of those claims. This motion is supported by the accompanying Statement of Undisputed Material Facts, Plaintiff's declaration, NCS's discovery responses, and other record evidence.

**I. INTRODUCTION**

This case concerns NCS's reporting of a disputed apartment-related collection

account on Plaintiff's consumer credit reports and NCS's refusal to reasonably investigate or correct that reporting. Plaintiff disputed the alleged debt and its reporting with the consumer reporting agencies and in writing directly to NCS, but NCS continued to allow the negative tradeline to appear while claiming that Plaintiff "refused to communicate" and "did not submit a dispute."

NCS's own discovery responses establish that: (1) NCS is not the original creditor and is merely a third-party collection agency; (2) NCS furnished information about Plaintiff's alleged debt to Equifax, Experian, and TransUnion using e-OSCAR and Metro 2; (3) NCS claims that it received no ACDV or dispute notice from any consumer reporting agency; and (4) NCS denies receiving any written dispute from Plaintiff and refuses to produce internal notes, ACDV records, or policies. When combined with Plaintiff's dispute letters and credit reports, there is no genuine dispute of material fact as to NCS's liability, or at minimum as to specific elements of Plaintiff's FCRA and FDCPA claims.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. NCS is not the original creditor of the alleged debt at issue in this case. In response to Plaintiff's Requests for Admission, NCS admitted that it "is not the original creditor of the alleged debt."
2. NCS is a third-party collection agency that collects on accounts placed with it by an original creditor. In its interrogatory responses, NCS stated that "NCS is a third-party collection agency, and that the original creditor merely placed the account with it for collections."
3. NCS did not purchase or acquire ownership of the alleged debt. NCS answered that

it "did not purchase or acquire any ownership interest in the alleged debt" and "does not claim ownership of the debt."

4. NCS used e-OSCAR and Metro 2 to furnish and handle disputes. NCS admitted that when it receives a valid dispute, it "reviews information provided by the consumer or CRA, consults internal account records, and reviews records provided by the creditor," and "then responds through the e-OSCAR system in accordance with Metro 2 standards."

5. NCS furnished information about Plaintiff's alleged debt to the major CRAs. NCS stated that, to the extent it furnished information, it would have been sent to TransUnion, Experian, and Equifax.

6. NCS claims it never received any ACDV or dispute notice from any CRA concerning Plaintiff. In answer to Interrogatory No. 7 (22), NCS stated that "it has not received any ACDV notices from any CRA (Experian, Equifax, or Trans Union) concerning any dispute by Plaintiff."

7. NCS denies that Plaintiff disputed the alleged debt in writing with NCS. In response to Request for Admission No. 3, NCS "denied" that "Plaintiff disputed the alleged debt with [NCS] in writing."

8. NCS denies that it received a dispute notice from any CRA regarding the alleged debt. In response to Request for Admission No. 4, NCS "denied" that it "received at least one dispute notice from a consumer reporting agency regarding the alleged debt."

9. NCS claims Plaintiff "refused to communicate" and did not indicate whether he

disputed the debt. In Interrogatory No. 10 (25), NCS stated that "Plaintiff refused to communicate with Defendant and outright refused to indicate whether he disputed the debt, apparently in order to try and drum up this frivolous lawsuit."

10. NCS refused to produce policies and training materials for handling FCRA/FDCPA disputes, citing confidentiality and relevance objections, and asserted that "the FCRA is inapplicable" and that Plaintiff has not identified any specific deficiency in NCS's handling of his account.

11. NCS refused to produce internal notes or records concerning Plaintiff's account and dispute, claiming Plaintiff submitted no disputes and that any such documents would only be produced, if at all, "at or before the deadline for production."

12. NCS refused to produce any ACDV or e-OSCAR records and stated "none" exist in response to a request for "[a]ny and all ACDV or e-Oscar records relating to Plaintiff's dispute."

13. Despite NCS's denials, Plaintiff submitted written disputes regarding the alleged debt and its credit reporting to [NCS and/or the CRAs] on or about [dates], copies of which are attached as Exhibits

14. Plaintiff's credit reports from [Equifax/Experian/TransUnion] 1/26/2026 show that NCS reported a negative tradeline for the alleged debt, including collection/charge-off status information, both before and after Plaintiff's disputes.

15. As a result of NCS's reporting, Plaintiff's credit score was lowered, and Plaintiff was denied housing and other credit opportunities, as described in his accompanying declaration.

16. Experian reports a collection tradeline for "NATIONAL CREDIT SYSTEM" with original creditor "MAA BENTON APTS."

17. Experian shows this collection account opened on June 7, 2024, with an original balance and current balance of $25,273, and status "Collection account. $25,273 past due as of Jan 2026."

18. Experian's payment history for the NATIONAL CREDIT SYSTEM collection shows multiple months coded as "C" (collection) in 2025 and January 2026.

19. Experian's comments for the NATIONAL CREDIT SYSTEM tradeline state: "Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act)."

20. Experian's report notes that Plaintiff has "1 collection" and specifically identifies the NATIONAL CREDIT SYSTEM account as that collection.

**NCS's statements:**

21. NCS claims it has not received any ACDV notices from Experian, Equifax, or TransUnion concerning any dispute by Plaintiff.

22. NCS denies that it received any dispute notice from a consumer reporting agency regarding the alleged debt.

23. NCS denies that Plaintiff disputed the alleged debt with NCS in writing and asserts that Plaintiff "refused to communicate" and "refused to indicate whether he disputed the debt."

### III. LEGAL STANDARD

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party may meet its burden by showing that the non-movant has no evidence to support an essential element of its case and by relying on admissions, interrogatory answers, and production responses.

## IV. ARGUMENT

### A. NCS Is a "Debt Collector," Not a Creditor, and Is Subject to the FDCPA

NCS's admissions establish that it is not the original creditor, did not purchase the debt, and merely collects debts placed with it by another entity.

- It admitted it is not the original creditor.
- It stated it is a third-party collection agency and does not own the debt.

These facts satisfy the statutory definition of a "debt collector" under the FDCPA and undercut any argument that NCS is acting as a creditor.

Experian's coding proves a consumer dispute exists despite NCS's denials.

Experian's collection tradeline for NATIONAL CREDIT SYSTEM includes the remark "Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act)." That remark is added by Experian only when a consumer submits a dispute. NCS nevertheless maintains that Plaintiff "did not submit any disputes to the CRAs" and that it has received "no ACDV notices" from Experian, Equifax, or TransUnion concerning any dispute by Plaintiff. At a minimum, these facts establish without genuine dispute that (a) the NCS/MAA Benton Apartments collection account appears on Plaintiff's Experian report as an active collection and (b) Experian has coded that account as "disputed by consumer."

**B. NCS Furnished Information to CRAs and Uses e-OSCAR/Metro 2**

NCS admits that, to the extent it furnished data on Plaintiff's debt, it did so to TransUnion, Experian, and Equifax, using e-OSCAR and Metro 2 format.

- This establishes NCS as a furnisher of information to CRAs, bringing it within the scope of FCRA duties under 15 U.S.C. § 1681s-2(b) once it receives notice of a dispute.

**C. There Is a Genuine, and Largely One-Sided, Record that Plaintiff Disputed the Debt**

NCS's position is that:

- Plaintiff did not send a written dispute to NCS.
- Plaintiff did not submit any valid disputes to any CRA.
- NCS therefore received no ACDV.

Plaintiff's dispute letters to NCS and/or the CRAs, and the CRAs' notice records CRAs notified NCS through ACDV/e-OSCAR.

- NCS either failed to investigate or failed to reasonably modify/delete the tradeline.
- NCS is a debt collector.
- NCS is a furnisher to CRAs that uses e-OSCAR/Metro 2.
- NCS has taken the formal position that it received no ACDVs and no written dispute, which can be binding for trial and future motions.

**D. NCS's Admissions and Refusals Support FDCPA Theories**

For FDCPA claims (e.g., false representation of the debt, continued collection without proper verification, or unfair practices), NCS's discovery posture matters:

- NCS claims it has documentary evidence and contracts but refuses to produce them absent a protective order.
- NCS claims Plaintiff never disputed and never communicated, while you have communications and dispute letters.
- NCS refuses to produce policies and training materials while asserting the FCRA is inapplicable.

This supports a request for summary judgment (or at least issue preclusion) on discrete FDCPA elements like:

- NCS's status as a debt collector (undisputed).
- NCS's furnishing of negative tradeline information to CRAs.
- The existence and content of the tradeline (via your reports and their admissions).

**E. At Minimum, the Court Should Enter Partial Summary Judgment on Narrow Issues**

Even if the Court finds that some issues (like whether an ACDV was actually sent) present fact disputes, there is no genuine dispute on these issues:

NCS is not the original creditor and is a third-party collection agency.

NCS furnished information about Plaintiff to TransUnion, Experian, and Equifax through e-OSCAR and Metro 2.

NCS claims that it received no ACDV from any CRA regarding Plaintiff.

NCS claims Plaintiff did not dispute the debt in writing with NCS and "refused to communicate."

Plaintiff, ask the Court to:

Deem these facts established under Fed. R. Civ. P. 56(g), even if full liability is not yet decided.

**V. RELIEF REQUESTED**

Plaintiff respectfully requests that the Court:

Enter summary judgment in Plaintiff's favor on his FCRA and FDCPA claims against NCS, finding NCS liable as a matter of law; or, in the alternative,

Enter partial summary judgment under Rule 56(g) that:

a. NCS is a debt collector, not the original creditor, for the alleged debt.

b. NCS furnished information about Plaintiff's alleged debt to TransUnion, Experian, and Equifax using e-OSCAR/Metro 2.

c. NCS has taken the position that it received no ACDV or CRA dispute notice regarding Plaintiff.

d. NCS has denied that Plaintiff disputed the debt in writing with NCS.

Grant such other and further relief as the Court deems just and proper.

Dated: this 27th Day of January 2026.


FREDERICK SILVER
21905 MOUNTAIN HWY E UNIT 4143,
SPANAWAY, WA 98387-7583
E-MAIL: ASCLV1@GMAIL.COM
TEL: (702) 473-0365

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was mailed to the Clerk of Court United States District Court for the Northern District of Georgia at the address listed below: US District Court Clerk: 121 Spring Street SE Room 201, Gainesville, GA 30501-3789 and served on Katrina DeMarte, DeMarte Law, PLLC 39555 Orchard Hill Pl. Ste 600 / PMB 6338 Novi, MI 48375. Attorney for Defendant National Credit Systems, Inc. via the Court efile system.

On this 27th day of January 2026

FREDERICK O. SILVER
21905 MOUNTAIN HWY E, UNIT 4143.
SPANAWAY, WA 98387-758
E-MAIL: ASCLV1@GMAIL.COM
TEL: (702) 473-0365

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST NATIONAL CREDIT SYSTEMS, INC.